**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION**

AMERIS BANK

      Plaintiff,

v.

EDWARD VAUGHAN and COASTAL
STATES BANK

      Defendants.

Case No. ___2:26-cv-1558-RMG___

**VERIFIED COMPLAINT**

Plaintiff Ameris Bank ("Ameris"), by its undersigned counsel, hereby alleges as follows:

**INTRODUCTION**

1.     Plaintiff Ameris Bank is a banking institution operating in the Southeastern United States that offers a range of financial services including traditional banking and lending products, treasury and cash management, wealth management, insurance premium financing, and mortgage and refinancing solutions.

2.     Defendant Edward Vaughan ("Vaughan") was a Commercial Banking Marketing Executive at Ameris, operating out of Charleston, South Carolina from July 13, 2020 to January 5, 2026. At the time of his hiring and as a condition of his employment, Mr. Vaughan signed an Agreement (as defined below) that, among other things, contained a standard non-solicitation covenant prohibiting Mr. Vaughan for a period of twelve months following termination of his employment from soliciting or attempting to solicit any customers of Ameris with whom he had material contact during the prior twelve months.

3.     On or about January 5, 2026, Mr. Vaughan voluntarily terminated his employment with Ameris. Shortly thereafter, he joined a competitor, Defendant Coastal States Bank ("Coastal

States"), which offers banking services in many of the same regions as Ameris, including the South Carolina Lowcountry.

4.     In the time since leaving Ameris, Mr. Vaughan has intentionally and flagrantly violated his obligations under the Agreement by deliberately using the information he acquired at Ameris in an attempt to poach Ameris's customers.  This effort has been at all relevant times facilitated and encouraged by Defendant Coastal States, which has conceded awareness of Mr. Vaughan's covenant not to solicit Ameris customers for a period of one year.

5.     These efforts include, but are not limited to, an onsite visit by Mr. Vaughan and other Coastal States employees to a known Ameris customer ("Client 1") with whom Ameris was concurrently negotiating a replacement credit line.  Prior to his departure, Mr. Vaughan had been assigned to that account, was Client 1's primary point of contact at Ameris, and was negotiating the terms of the transactions with Client 1, including making recommendations for final internal approval.  To make matters worse, while still at Ameris, Mr. Vaughan deliberately slow-walked the negotiation process to ensure that no agreement between Client 1 and Ameris could be reached prior to his departure.  Shortly after leaving Ameris, he and Coastal States offered this customer a generous package with more attractive terms than he believed Ameris was currently offering.

6.     Caught red-handed when word of this duplicitous behavior reached Ameris, Mr. Vaughan and Coastal States attempted to deflect, both insisting by letter that Mr. Vaughan is in compliance because communications with the customers were first initiated by those customers. Even assuming that assertion is true (and it appears to be materially false with at least one customer Ameris is aware of), it is no defense to his breach.

7.     The Agreement does not carve out solicitation with customers who contact Mr. Vaughan first.  Nor does it permit Mr. Vaughan to solicit business from former Ameris customers

2

with whom he had material contact through his affirmative efforts simply because those customers made the initial outreach.

8.     In a letter dated February 20, 2026, Mr. Vaughan admitted that he remains bound by the Agreement and its non-solicitation provision; admitted that Coastal States was aware of those obligations and purported to instruct him regarding compliance; and further admitted that, since leaving Ameris, he engaged in post-employment communications with multiple identified Ameris customers concerning lines of credit and competing banking services.

9.     Mr. Vaughan's February 20 letter identified Client 1 as one of the Ameris customers he had engaged in business discussions with; it also identified Client 2, whom Ameris was previously unaware had been solicited.  According to Mr. Vaughan, he was asked to "help [Client 2] with his line of credit."  Mr. Vaughan's letter, however, omits any detail regarding what "help" he provided or whether Client 2 became a customer of Coastal States for any products or services competitive with Ameris offerings.

10.     After receiving that letter, Ameris learned that Mr. Vaughan has been actively attempting to solicit Client 3—a business customer that was not identified in his letter.  There are only two plausible explanations for this revelation:  either Mr. Vaughan had previously attempted to solicit Client 3 but ***deliberately omitted*** identifying it in the letter or, after sending this letter in which he committed to abiding by his obligations under the Agreement, nonetheless attempted to solicit Client 3 anyway.  No matter which is the case, it constitutes a deceitful act and shows Mr. Vaughan, with the help of Coastal States, has every intention to skirt the Agreement however he can in an effort to gain business from Ameris customers.

11.     Mr. Vaughan has intentionally breached the Agreement, tortiously interfered with Ameris's contractual relationships with existing customers, and misappropriated trade secrets.  For

its part, Coastal States tortiously interfered with Ameris's contractual relationships with existing customers, misappropriated trade secrets, engaged in unfair and deceptive trade practices, and negligently supervised its employee, Mr. Vaughan.

12.     In order to address this ongoing and imminent harm, Ameris seeks preliminary injunctive relief (i) barring Mr. Vaughan from soliciting or attempting to solicit any Ameris customer for whom Mr. Vaughan had material contact in the twelve months prior to his departure from Ameris; (ii) enjoining Mr. Vaughan and Coastal States from using, disclosing, or relying upon Ameris's confidential, proprietary, or trade secret information for any purpose; (iii) compelling Mr. Vaughan and Coastal States to identify in writing each and every Ameris customer Mr. Vaughan has had business-related contact with since January 5, 2026, including whether the initial contact was customer-initiated and the method of that communication; and (iv) ordering Coastal States to implement and maintain reasonable measures to ensure Vaughan's compliance with his contractual and legal obligations to Ameris through January 5, 2027.  Ameris further demands damages in an amount to be determined at trial.

## **PARTIES**

13.     Plaintiff Ameris Bank is a Georgia-chartered bank with its principal place of business in Atlanta, Georgia.

14.     Defendant Coastal States Bank is a South-Carolina chartered bank with its principal place of business in Hilton Head, South Carolina.

15.     Upon information and belief Defendant Edward Vaughan is an individual residing in Charleston, South Carolina and is currently employed by Defendant Coastal States Bank.

4

## JURISDICTION

16.    This Court has original subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because: (a) there is complete diversity of citizenship among the parties; and (b) the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

17.    This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 because claims brought in this action arise under federal law.  This Court has supplemental jurisdiction of state law claims under 28 U.S.C. § 1367.

18.    Venue is proper in this district pursuant to 28 U.S.C. § 1391 because Defendant Vaughan resides in this District, Defendant Coastal States' principal place of business is in this District and a substantial portions of the events giving rise to these claims occurred in this District.

## FACTUAL BACKGROUND

### A.  Mr. Vaughan's Employment with Ameris

19.    Founded in 1971, Ameris has a long, rich history and is fiercely committed to bringing financial peace of mind to the communities it serves.  Headquartered in Atlanta, Georgia, Ameris operates over 200 financial centers across the Southeast.

20.    Ameris serves the needs of corporate customers and individuals throughout the region, including in the greater Charleston, South Carolina metro area.

21.    Mr. Vaughan was hired by Ameris in July 2020 to serve as Commercial Banking Marketing Executive.

22.    As a condition of employment and in consideration of mutual covenants, conditions and obligations, Mr. Vaughan executed a Confidential Information Agreement (the "Agreement"). The Agreement is attached as Exhibit A to the Complaint.

23.    Paragraph 2 of the Agreement provides:

*Confidential Information.* Employee acknowledges that, as a result of his employment with Ameris Bank, he may become acquainted with the following confidential information or trade secrets of Ameris Bank: Ameris Bank's customer, supplier and employee information; including, but not limited to, contractual agreements with customers, lists of past, present, or prospective customers, customer sales summaries, customer files or customer-related correspondence, customer lists, customer requirements and other customer data not generally available to the public, as well as customer information within the scope of the Gramm-Leach-Bliley, Financial Services Modernization Act of 1999, 15 U.S.C. Section 6801 *et. seq.*; Ameris Bank's financial and marketing information and projections, including but not limited to, market surveys, marketing objectives, and marketing strategies; Ameris Bank's products and services and the pricing for same, including, but not limited to, price books or other pricing information, and other information about costs, profits, sales, and markets; Ameris Bank's business methods and procedures, including, but not limited to, Ameris Bank's operations and/or processes and formulas, plans, drawings, flow charts, ratios, secret processes or machines, inventions, designs, drawings, blueprints, software, concepts, prototypes, techniques, procedures, systems, methods, studies, research projects, new product development plans, software, databases or other technology created, developed or compiled by Ameris Bank; hardware and software configurations developed by Ameris Bank; and other commercially sensitive information the secrecy of which is valued by Ameris Bank (collectively, "Confidential Information").

24.     Paragraph 6 of the Agreement provides:

With respect to any Trade Secrets, whatever their nature and form and whether obtained orally, by observation, from written materials or otherwise during or as the result of Employee's employment by Ameris Bank, Employee agrees:

(a) to hold all such Trade Secrets in strict confidence, and not publish or otherwise disclose any portion thereof.

(b) to make no use of any such Trade Secrets except such use as is required in the performance of Employee's duties for Ameris Bank or with prior written consent of the President of Ameris Bank;

(c) upon termination of Employee's employment, whether voluntary or involuntary, or upon Ameris Bank's request, to deliver to Ameris Bank, without copying or summarizing, all written materials and all models, mechanisms, documents, records, and tangible things and the like containing or relating to such Trade Secrets, all of which shall be and remain the sole property of Ameris Bank. For this purpose, "written materials" shall be deemed to include letters, memoranda, reports, notes, notebooks, books of account, data, drawings, prints, plans, specifications, formulas and all other documents or writings, and all copies thereof.

25.     Paragraph 7 of the Agreement provides:

*Customer Non-Solicitation*. For a period of twelve (12) months after termination of his employment for any reason (whether voluntary or involuntary), Employee agrees that he will not solicit or attempt to solicit any customers or former customers of Ameris Bank with whom Employee had material contact during the twelve (12) months immediately prior to the conclusion of his employment with Ameris Bank. For purposes of the preceding sentence, "material contact" shall mean interaction, which takes place in an effort to further a business relationship. The prohibition contained in this Section shall apply only to actual or attempted solicitation for the purpose of marketing or selling products or services which compete with those products or services offered by Ameris Bank which were offered by Ameris Bank at the conclusion of Employee's employment.

26.     Section 9 of the Agreement provides that, should Ameris utilize the service of an attorney to enforce the provisions of the Agreement, Ameris is entitled to recover attorney's fees, costs, and expenses of enforcement in addition to any damages or other remedies.

27.     Taken together, these provisions provide reasonable limits on how Mr. Vaughan may use the information acquired through Ameris's customer relationships, obligations that continue in full force after his departure from the bank.

28.     Specifically, the Agreement requires Mr. Vaughan to maintain confidential information and trade secrets, and refrain from solicitation of customers for whom he had material contact in the previous twelve months.

29.     During his employment at Ameris, Mr. Vaughan spent time directly interacting with certain Ameris customers gaining proprietary information not just about Ameris's offerings and those terms, but also the manner in which Ameris manages its relationships with burgeoning and established customers alike.  This information would be extremely valuable to a competitor bank, particularly one with its sights set on securing business from one or more of those Ameris customers.

**B. Mr. Vaughan Leaves Ameris To Join Coastal States, Intending to Leverage His Knowledge of Ameris Customers To Unlawfully Solicit Business to Coastal States**

30.     As part of his departure process, Mr. Vaughan was reminded of his continuing obligations under the Agreement by Executive Vice President Richard Sturm. Mr. Vaughan verbally stated to Mr. Sturm that he was not going to call on Ameris customers.

31.     Shortly after leaving Ameris in January 2026, Mr. Vaughan began soliciting customers of Ameris with which he had material contact within the prior twelve months.

32.     These efforts included an attempt to poach Client 1, a large customer of Ameris, that maintained a sizable credit line with Ameris for a period that included Mr. Vaughan's last twelve months at Ameris.

33.     Toward the end of Mr. Vaughan's tenure at Ameris, but *before* he gave notice to Ameris of his intent to leave to join a competitor, Mr. Vaughan was representing Ameris in conjunction with a credit line transaction with Client 1 but deliberately delayed finalizing the terms of the transaction.  This delay was significant, and attracted the attention of senior Ameris officers because the contemplated transaction was not one that typically required such a drawn-out negotiation period.

34.     Then, after joining Coastal States, Mr. Vaughan actively solicited Client 1 to obtain a  credit line with Coastal States at more favorable terms than Ameris was offering at that time.

35.     Part of that solicitation effort was a trip Mr. Vaughan made to Client 1's office to pitch Client 1 on the credit line with Coastal States instead of reaching an agreement with Ameris.

36.     Mr. Vaughan knew the terms that Ameris was offering to Client 1 because Mr. Vaughan was directly involved in those prior discussions.  He leveraged that knowledge to craft a competing offer designed to steal the customer—the paradigmatic risk that non-solicitation covenants are intended to prevent.

8

37. Mr. Vaughan was accompanied in his visit to Client 1's office by Stephen R. Stone, President and Chief Executive Officer of Coastal States. Having the CEO accompany Mr. Vaughan shows deliberate prioritization by Coastal States to poach this customer, despite its awareness that Client 1 is an existing Ameris customer with whom Mr. Vaughan had material contact during his employment. This willful breach of the Agreement was encouraged, facilitated and prioritized by senior executives of Coastal States.

38. As a direct result of Defendants' actions, Ameris was compelled to negotiate a materially different credit line transaction with Client 1 on different, more costly terms.

39. In addition to his solicitation of Client 1, Mr. Vaughan has admitted engaging in post-termination business communications with at least one additional Ameris customer with whom he had material contact during his employment. Client 2 is a longstanding Ameris customer that Mr. Vaughan serviced during his tenure at the bank.

40. Client 2 is a company that maintained a credit line with Ameris. According to Mr. Vaughan he received a call from a principal at Client 2 to "help him with his line of credit." Although Mr. Vaughan attempts to characterize this communication as a response to customer-initiated outreach, he does not dispute that he discussed competitive lending opportunities with these Ameris customers after joining Coastal States, and does not provide any detail regarding what "help" he provided or whether Client 2 became a customer of Coastal States for any products or services competitive with Ameris offering.

41. Mr. Vaughan's misconduct extends beyond Clients 1 and 2 (including as detailed *infra*) and demonstrates sustained efforts to solicit multiple Ameris customers with whom Mr. Vaughan had material contact in the year preceding his departure. The information regarding how

9

many customers and the extent of Mr. Vaughan's solicitation is uniquely within the knowledge of Defendants.

**C. Mr. Vaughan and Coastal States Deny, Delay and Obfuscate After Being Caught Soliciting Ameris Customers**

42.     In or around early February 2026, Ameris learned that Mr. Vaughan was actively soliciting existing Ameris customers with whom Mr. Vaughan had material contact during the last twelve months of his employment at Ameris.

43.     On February 5, 2026, counsel for Ameris sent a letter to Mr. Vaughan and Mr. Stone (in his capacity as CEO of Coastal States Bank) with the memo line "Violation of Confidentiality Agreement and Customer Non-Solicitation Provision." The February 5, 2026 letter is attached as Exhibit B to the Complaint.

44.     The letter provided formal notice of the violation, demanded the immediate cessation of prohibited activities, and reiterated the plain terms of the non-solicitation covenant in the Agreement. The letter also sought a response on three questions within 10 days:

> We require the following from both you and Coastal States Bank within 10 days of your receipt of this letter:
>
> 1. Provide written confirmation you will strictly comply with all terms of the confidentiality agreement, including the customer non-solicitation provision, for the remainder of the restriction period.
> 2. Provide a detailed written explanation of the specific measures you and Coastal States Bank will implement to ensure no future violations of the confidentiality agreement occur.
> 3. Provide a complete list of all Ameris Bank customers with whom you had material contact during your employment who have been contacted, solicited, or approached by you or Coastal States Bank since your departure from Ameris Bank, including the nature and extent of such contact.

45.     On February 10, 2026, Mr. Vaughan sent a response letter to Ameris's counsel, confirming receipt of the letter. Mr. Vaughan did not answer any of the three questions posed to

him, and instead incorrectly asserted that he had not solicited any Ameris customers in violation of the Agreement. As rationale for his position, Mr. Vaughan insisted "certain Ameris customers reached out to me without any action on my part prior to such outreach. My responding to such unsolicited outreach is not a violation of the Agreement, which only prohibits solicitation and attempted solicitation of certain customers." This statement both misinterprets the Agreement and misconstrues applicable law. Mr. Vaughan's February 10, 2026 letter is attached as Exhibit C to the Complaint.

46. The following day, on February 11, 2026, Coastal States responded, stating that it was aware of Mr. Vaughan's obligations and that it "takes these obligations seriously and expects Mr. Vaughan to fully comply with them." Nevertheless, it also incorrectly asserted that Mr. Vaughan was free to seek business from Ameris customers, simply because those customers supposedly contacted him first. Like Mr. Vaughan, Coastal States' position is not supportable. Coastal States' February 11, 2026 letter is attached as Exhibit D to the Complaint.

47. Whether or not the customers in question indeed contacted Mr. Vaughan first, there is no exception in the Agreement or South Carolina law for solicitation or attempted solicitation arising out of contacts initiated by a customer. The Agreement's terms are plain, and Mr. Vaughan's active attempts to secure business from existing Ameris customers (with whom he had material contact) violate those terms.

48. Despite their failure to respond to Ameris's targeted questions in their respective letters, both Mr. Vaughan and Coastal States acknowledged the enforceability of the Agreement and conceded that Mr. Vaughan is required to abide by his obligations under that Agreement.

49. Counsel for Ameris responded to both letters on February 11, 2026, explaining that their respective interpretations of the Agreement are incorrect under South Carolina law and

11

reiterating Ameris's demand that Mr. Vaughan supply answers to the three questions posed on February 5, 2026. Ameris's February 11, 2026 letter is attached as Exhibit E to the Complaint.

50. On February 20, 2026, Mr. Vaughan responded by letter to Ameris's February 11, 2026 correspondence. Mr. Vaughan's February 20, 2026 letter is attached as Exhibit F to the Complaint.

51. In that letter, Mr. Vaughan expressly acknowledged that he is bound by the Agreement, including the customer non-solicitation covenant, and represented that it is his intention to comply with those obligations. Mr. Vaughan further admitted that Coastal States Bank is aware of his contractual obligations to Ameris and instructed him to honor them.

52. In the same letter, Mr. Vaughan identified for the first time two Ameris customers with whom he admits engaging in post-termination business communications: (a) Client 1, regarding bidding on a line of credit, which Ameris had previously learned about; and (b) Client 2, regarding assistance with a line of credit.

53. On February 21, 2026, Coastal States sent a letter replying to the February 11, 2026 letter. The letter purported to respond to the three questions posed by Ameris, but did so with platitudes that failed to specify any concrete steps taken by Coastal States to ensure Mr. Vaughan abided by the provisions of his agreement and, crucially, failed to identify any single Ameris customer with whom Mr. Vaughan had communicated. Coastal States' February 21, 2026 letter is attached as Exhibit G to the Complaint.

54. Although Mr. Vaughan has since identified certain Ameris customers with whom he admits engaging in post-termination communications, he and Coastal States have still refused to provide meaningful assurances of compliance or to cease further contact with Ameris customers covered by the Agreement. To the contrary, Mr. Vaughan maintains that he is free to continue

12

engaging in competitive banking discussions with Ameris customers so long as he characterizes (unilaterally) those communications as customer-initiated.  That is not a correct interpretation of the agreement and, indeed, directly contradicts its plain terms, and underscores Defendants' ongoing refusal to abide by its restrictions. As a result, Ameris remains unable to determine the full scope of Mr. Vaughan's misconduct or to prevent continued and imminent harm to its customer relationships absent judicial intervention.

55.    In the days since it received Mr. Vaughan's February 20 letter, Ameris has learned that Mr. Vaughan attempted to solicit another Ameris customer, Client 3.  The CEO of Client 3 recently informed Ameris that *Mr. Vaughan contacted him* to solicit his business on behalf of Coastal States, but that Client 3 declined any business with Coastal States.

56.    Ameris learned from Client 3 that Mr. Vaughan affirmatively reached out to it—contradicting the prior representations from both Mr. Vaughan and Coastal States.  Client 3 declined Mr. Vaughan's attempts to secure its business.

57.    Mr. Vaughan thus either engaged in solicitation attempts with Client 3 prior to sending the February 20, 2026 letter to Ameris and *deliberately omitted* it because he could not credibly claim it was a "customer-initiated" interaction, or tried to solicit Client 3 *after* giving assurances to Ameris that he and Coastal States intended to comply with his obligations under the Agreement.  In either case, Mr. Vaughan clearly violated the Agreement and his actions demonstrate a willful repudiation of his contractual commitments.

58.    Ameris thus has significant reason to believe that Mr. Vaughan's attempts to solicit Ameris customers are not limited to these three clients, and likely extend to numerous other current or recent Ameris customers with whom Mr. Vaughan had material contact.

59.     This obfuscation is, upon information and belief, a deliberate attempt to delay any resolution of this dispute and provide additional opportunities for Mr. Vaughan to actively solicit Ameris customers and secure their business *before* Ameris can take corrective action.  This purposeful delay is designed to frustrate any attempt by Ameris to remediate the harm to its customer relationships and has the effect of maximizing the damage suffered by Ameris in the form of lost customers or lost opportunities for further business with those customers.

60.     These actions demonstrate intent on the part of both Mr. Vaughan and Coastal States to tortiously interfere with Ameris's contractual and business relations.

## NECESSITY OF AN INJUNCTION

61.     By virtue of the foregoing, Ameris has demonstrated a strong likelihood of success on the merits that favors the issuance of an injunction against Defendants.

62.     Unless Defendants are enjoined from the foregoing conduct, Ameris will be immediately and irreparably harmed by *inter alia* (i) losing current customers and/or harming Ameris's relationships with those customers; (ii) misappropriation of proprietary customer strategies, pricing information, methodologies, and other confidential information; and (iii) loss of time necessary to remediate the harm already done to those customer relationships by virtue of Mr. Vaughan's duplicitous and dilatory tactics.

63.     Mr. Vaughan and Coastal States admit that Mr. Vaughan has already engaged multiple Ameris customers regarding competitive banking services.  Defendants' actions indicate that they have no intention of ceasing these communications so long as they can spin the interactions as initiated by the customer—a standard that is not verifiable and does not even appear to be factually accurate for at least one of the three Ameris customers at issue here.  Therefore, the threat of continued violations is real, immediate, and ongoing, as demonstrated by the fact that Mr.

Vaughan has solicited Client 3, under the nose of Ameris despite notice of this dispute and without even the pretense of "responding" to a client initiation.

64.     Ameris has no adequate remedy at law, as economic damages alone are insufficient to prevent ongoing harm that is highly likely to have negative cascading effects beyond the expiration of the non-solicitation period.  The full magnitude of Ameris's damages are also extremely difficult to adequately calculate.

65.     The balance of hardships weighs in favor of Ameris, as Coastal States would suffer no harm from a preliminary injunction and any benefit it would be foregoing as a result of the injunction is ill-gotten.

66.     The public interest is in favor of upholding valid agreements between employee and employer, including reasonably tailored non-solicitation agreements, and protecting trade secrets.  There is also a well-established public interest in predictable and uniform regulation of financial institutions.

67.     Ameris is entitled to a preliminary injunction through the end of the non-solicitation period pursuant to the Agreement, Federal Rule of Civil Procedure 65, the South Carolina Trade Secrets Act, S.C. Code § 39-8-10 *et seq.* and Defend Trade Secrets Act, 18 U.S.C. § 1836 *et seq.*

68.     Accordingly, Ameris requests that this Court issue a preliminary injunction order (i) enjoining Mr. Vaughan from soliciting or attempting to solicit any Ameris customer for whom Mr. Vaughan had material contact in the twelve months prior to his departure from Ameris; (ii) enjoining Mr. Vaughan and Coastal States from using, disclosing, or relying upon Ameris's confidential, proprietary, or trade secret information for any purpose; (iii) compelling Mr. Vaughan and Coastal States to identify in writing each and every Ameris customer Mr. Vaughan has had business-related contact with since January 5, 2026, including whether the initial contact was

customer-initiated and the method of that communication; and (iv) ordering Coastal States to implement and maintain reasonable measures to ensure Vaughan's compliance with his contractual and legal obligations to Ameris through January 5, 2027.

## FIRST CAUSE OF ACTION
### Breach of Contract against Defendant Vaughan

69. Plaintiff realleges and incorporates the preceding paragraphs as if set forth fully herein.

70. The Agreement was a legally valid and enforceable contract between Ameris and Mr. Vaughan. South Carolina law routinely upholds non-solicitation covenants such as this one that are limited in time and scope.

71. Ameris fulfilled its contractual obligations under the Agreement.

72. Mr. Vaughan breached Sections 2, 6, and 7 of the Agreement by using and/or attempting to use confidential customer information and trade secrets acquired in the course of his employment at Ameris to solicit Ameris customers, including Clients 1, 2, and 3.

73. During his time at Ameris, Mr. Vaughan had material contact with each of Clients 1, 2 and 3.

74. Mr. Vaughan's solicitation included an in-person pitch meeting with Client 1 at Client 1's office that, among other things, attempted to convince Client 1 to do business with Coastal States instead of Ameris, which constitutes solicitation under the Agreement.

75. Mr. Vaughan admitted to engaging in substantive discussions about a credit line agreement with Client 2, which constitutes solicitation under the Agreement. He structured this pitch using confidential information from Ameris acquired during his employment.

76. Mr. Vaughan affirmatively contacted Client 3 in an attempt to secure Client 3's business for Coastal States, which constitutes solicitation under the Agreement.

77.     Ameris suffered injuries entitling it to both injunctive and monetary relief with regard to these clients, including, but not limited to, being compelled to offer enhanced terms to Client 1 to retain the customer and the additional resources used in securing an enhanced arrangement with Client 1.

78.     Under Section 9 of the Agreement, Ameris is entitled to attorney's fees, costs and expenses of efforts to enforce the Agreement, which includes the filing and maintenance of this Action.

### SECOND CAUSE OF ACTION
**Violation of South Carolina Trade Secrets Protection Act against Defendants Vaughan and Coastal States**

79.     Plaintiff realleges and incorporates the preceding paragraphs as if set forth fully herein.

80.     Mr. Vaughan misappropriated protected Ameris trade secrets by utilizing or attempting to utilize such information to solicit Ameris customers.

81.     The information used by Mr. Vaughan, including customer lists, information about the financial products customers were interested in, and the terms customers were offered or likely to be offered by Ameris, were trade secrets.  This information has independent economic value and cannot be derived from public information.

82.     Ameris took reasonable steps to keep its trade secrets confidential, including, but not limited to, requiring customer-facing positions (like Mr. Vaughan's) to sign agreements that contain confidentiality and non-solicitation covenants that continue to apply post-termination.

83.     Mr. Vaughan misappropriated the trade secrets by communicating with Ameris customers in an attempt to solicit their business for Coastal States.  Specifically, Mr. Vaughan knew the status of Client 1's negotiations with Ameris and aimed to offer more favorable terms on

17

behalf of Coastal States; without the trade secrets, Mr. Vaughan and Coastal States would not have known how to undercut Ameris's offering.

84.     Mr. Vaughan used and intended to use the trade secrets for his own personal benefit as an employee at Coastal States.

85.     Coastal States knew or had reason to know Mr. Vaughan was impermissibly using improperly acquired information to structure his offerings to Ameris customers, and materially assisted Mr. Vaughan in doing so for its own corporate benefit.

86.     Among other things, Ameris suffered damages by being compelled to offer materially different terms to Client 1 and expend resources to maintain Clients 2 and 3.

## THIRD CAUSE OF ACTION
**Violation of Defend Trade Secrets Act against Defendants Vaughan and Coastal States**

87.     Plaintiff realleges and incorporates the preceding paragraphs as if set forth fully herein.

88.     The information used by Mr. Vaughan, including customer lists, information about what financial products customers were interested in, and the terms customers were offered or likely to be offered by Ameris, were trade secrets pursuant to 18 U.S.C. § 1839.

89.     Mr. Vaughan violated the statute by using trade secret information to solicit customers and structure business strategies.

90.     Coastal States is liable under the Defend Trade Secrets Act because it knew or had reason to know that the trade secrets information Mr. Vaughan brought to Coastal States concerning Ameris customers was acquired through improper means by Mr. Vaughan.

91.     Coastal States induced, encouraged, and facilitated the misappropriation of Ameris's trade secrets by supporting Mr. Vaughan in offering terms to Client 1 and other Ameris

customers based on pricing information Mr. Vaughan knew Ameris had offered or was considering to offer.

92.    Ameris took steps to keep its trade secrets confidential, including but not limited to requiring customer-facing positions (like Mr. Vaughan's) to sign agreements that contain confidentiality and non-solicitation covenants that continue to apply post-termination.

93.    Among other things, Ameris suffered damages by being compelled to offer materially different terms to Client 1 and expend resources to maintain Clients 2 and 3.

**FOURTH CAUSE OF ACTION**
**Tortious Interference With Contractual Relations against Defendants Vaughan and Coastal States**

94.    Plaintiff realleges and incorporates the preceding paragraphs as if set forth fully herein.

95.    Defendants tortiously interfered with Ameris's ongoing contractual relationships with its customers, including Clients 1, 2, and 3.

96.    Defendants were aware of Ameris's contractual relationships with the customers who purportedly contacted or were contacted by Mr. Vaughan.

97.    Defendants intentionally sought to interfere with these contractual relationships by trying to poach Ameris customers, including by attempting to offer terms Mr. Vaughan believed were more favorable than the terms Ameris had offered or was preparing to offer.

98.    The fact that Mr. Vaughan and Coastal States have sought to excuse the behavior in their letters demonstrates their intent to skirt the agreement and interrupt Ameris's ongoing and prospective business arrangements by any means necessary.

99.    Mr. Vaughan was expressly prohibited from using Ameris's confidential information or actively soliciting Ameris customers but nonetheless did so on behalf of and with the support of Coastal States.  There was no justification or privilege for doing so.

19

100.    Ameris suffered damages by, *inter alia*, expending additional resources to maintain customers solicited by Mr. Vaughan and making enhanced offers to existing customers on less favorable economic terms.

## FIFTH CAUSE OF ACTION
**Violation of the South Carolina Unfair Trade Practices Act against Defendant Coastal States**

101.    Plaintiff realleges and incorporates the preceding paragraphs as if set forth fully herein.

102.    Coastal States engaged in unfair and deceptive acts in the conduct of commerce, including, but not limited to, impermissibly using confidential and proprietary information acquired by Mr. Vaughan to attempt to poach customers from Ameris.

103.    Knowing and deliberate efforts to undermine valid non-solicitation and confidentiality agreements are immoral, unethical, and illegitimate business practices.

104.    Coastal States' attempt to unfairly steal Client 1 from Ameris by offering terms Mr. Vaughan believed were more commercially favorable than those he had been a part in offering to Client 1 while still at Ameris is capable of repetition, and has likely occurred with additional Ameris customers.

105.    Defendants' actions are unfair and oppressive conduct that threaten the public interest by undermining the interest of financial institutions that serve the community and are capable of repetition, which is evident from Mr. Vaughan's admission that he has been in active communication with multiple Ameris customers.

106.    Ameris suffered financial losses as a result of Defendants' conduct by, *inter alia*, expending additional resources to maintain customers solicited by Mr. Vaughan and making enhanced offers to existing customers on less favorable economic terms.

## SIXTH CAUSE OF ACTION
### Negligent Supervision against Defendant Coastal States

107. Plaintiff realleges and incorporates the preceding paragraphs as if set forth fully herein.

108. Coastal States owes a duty to properly supervise its officers and employees, including Defendant Vaughan. That duty includes training new hires and implementing policies and procedures to ensure that those new hires abide by pre-existing obligations, including covenants owed to their former employers.

109. Coastal States was aware of the terms of the Agreement and had a duty to put reasonable guardrails in place to prevent Mr. Vaughan's violation of contractual duties to Ameris.

110. Coastal States breached that duty to properly supervise Mr. Vaughan by not providing sufficient training, failing to implement adequate policies and procedures, and permitting Mr. Vaughan to engage in solicitation of customers it knew Mr. Vaughan had previously had material contact with. Among other things, this resulted in Mr. Vaughan affirmatively visiting an existing Ameris customer to pitch it on engaging with Coastal States over staying with Ameris.

111. Ameris has been harmed by Coastal States' refusal to properly supervise Mr. Vaughan.

## PRAYER FOR RELIEF

NOW THEREFORE, Plaintiff Ameris Bank prays for judgment in its favor and specifically for the following relief:

    a) A preliminary injunction (i) barring Mr. Vaughan from soliciting or attempting to solicit any Ameris customer for whom Mr. Vaughan had material contact in the twelve months prior to his departure from Ameris; (ii) enjoining Mr. Vaughan and

21

Coastal States from using, disclosing, or relying upon Ameris's confidential, proprietary, or trade secret information for any purpose; (iii) compelling Mr. Vaughan and Coastal States to identify in writing each and every Ameris customer Mr. Vaughan has had business-related contact with since January 5, 2026, including whether the initial contact was customer-initiated and the method of that communication; and (iv) ordering Coastal States to implement and maintain reasonable measures to ensure Vaughan's compliance with his contractual and legal obligations to Ameris through January 5, 2027;

b) Monetary damages to be determined at trial;

c) Exemplary damages pursuant to Count II and Count III;

d) Attorneys' fees and costs pursuant to Count, I, Count II, Count III and Count V;

e) Punitive damages pursuant to Count IV;

f) Treble damages pursuant to Count V; and

g) Any other such relief that the Court deems proper.

## JURY DEMAND

Plaintiff Ameris Bank demands a trial by jury of all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

22

This 14th day of April, 2026.

**AKERMAN LLP**

*By:*    /s/ Amy Errichiello
           Amy Errichiello (ID No. 14720)
           Samuel G. Mann (*pro hac vice forthcoming*)
           samuel.mann@akerman.com
           101 South Tryon Street, Suite 1910
           Charlotte, NC 28280
           Tel: (704) 625-7700
           Fax: (704) 625-0300

           *Attorneys for Plaintiff Ameris Bank*

23

## VERIFICATION

I, Richard Sturm, Executive Vice President and Carolina's Bank President of Ameris Bank, being duly sworn, hereby declare and affirm under the penalty of perjury that I have read the foregoing *Verified Complaint* in the above-captioned action and know the contents thereof; that the allegations therein are true and correct to the best of my personal knowledge, information, and belief; and that I am authorized to make this verification on behalf of Ameris Bank.

Executed on April 13, 2026.

Richard Sturm
Executive Vice President, Carolina's Bank President